UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VALERIE BETH EVERETT, ) | |
|     *Plaintiff*, ) | |
| ) | |
|   *vs.* ) | 1:16-cv-01806-JMS-MPB |
| ) | |
| FINANCIAL RECOVERY SERVICES, INC. and ) | |
| LVNV FUNDING, LLC, ) | |
|     *Defendants.* ) | |

**ORDER**

In 2014, Plaintiff Valerie Everett defaulted on payments for her consumer credit card, and the debt was charged off. Defendant LVNV Funding, LLC ("LVNV") purchased the collection rights to the debt, then engaged the services of Defendant Financial Recovery Services, Inc. ("FRS") to collect payment from Ms. Everett. A letter from FRS to Ms. Everett offered to accept payment for less than the amount due, and noted that the settlement "may have tax consequences." Ms. Everett claims that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") because none of the settlement options proposed in the letter would have required the Defendants to report the settlement to the Internal Revenue Service, so the communication from Defendants was misleading.

Presently pending before the Court is a Joint Motion to Dismiss filed by FRS and LVNV. [Filing No. 10.] Defendants argue that dismissal is warranted because Ms. Everett does not have standing to assert her FDCPA claims, and because she fails to state a claim upon which relief can be granted. For the reasons detailed herein, the Court **GRANTS** Defendants' Joint Motion to Dismiss. [Filing No. 10.]

## I. BACKGROUND

The factual allegations in the Complaint filed by Ms. Everett, which the Court must accept as true at this time, are as follows.

FRS and LVNV are debt collection agencies. [Filing No. 1 at 2-3.] Ms. Everett incurred debt on a consumer credit card issued by Citibank, N.A. ("Citibank"), and subsequently defaulted on her payments. [Filing No. 1 at 3.] Citibank charged off the debt, and LVNV purchased the collection rights to the debt from Citibank. [Filing No. 1 at 3.] LVNV then engaged the services of FRS to collect payment from Ms. Everett. [Filing No. 1 at 4.]

On March 3, 2016, FRS sent Ms. Everett a letter (the "Letter") which stated in relevant part:

> Please be advised that LVNV FUNDING LLC the current creditor-debt purchaser has purchased the account referenced above and it has placed it with our office for collection. The account listed above has been assigned to this agency for collection.
>
> * * *
>
> As of the date of this notice you owe $2,665.79 and we are authorized to offer you the following options:
>
> 1. ( ) Our office will allow you to settle your account for 85.00% of the above referenced balance for a total 1 time lump sum payment of $2,265.92. We request this payment within 35 days after receipt of this letter. If you need additional time to respond to this offer, please contact us. Upon receipt and clearance of the payment of $2,265.92, this account will be considered settled in full for less than the full balance and you will be released of all liability to the creditor relative to the above listed account. We are not obligated to renew this offer.; or
> 2. ( ) Our office will allow you to settle your account for 90.00% of the above referenced balance for a total payment of $2,399.22. You can pay this in 2 payments and we request the first payment within 35 days after receipt of this letter and the payments can be no more than 30 days apart. If you need additional time to respond to this offer, please contact us. Upon receipt and clearance of these two payments of $1,199.61, this account will be considered settled in full for less than the full balance and you will be released of all liability to the creditor relative to the above listed account. We are not obligated to renew this offer.; or

    3. ( ) Our office will allow you to settle your account for 95.00% of the above referenced balance for a total payment of $2,532.51. You can pay this in <u>3 payments</u> and we request the first payment within 35 days after receipt of this letter and the payments can be no more than 30 days apart. If you need additional time to respond to this offer, please contact us. Upon receipt and clearance of these three payments of $844.17, this account will be considered settled in full for less than the full balance and you will be released of all liability to the creditor relative to the above listed account. We are not obligated to renew this offer.

This settlement may have tax consequences.  Please consult your tax advisor.

[Filing No. 1-1 at 2 (emphasis in original).]

Ms. Everett initiated this lawsuit on July 6, 2016, focusing on the language "This settlement may have tax consequences." [Filing No. 1 at 5 (the "<u>Tax Consequences Language</u>").] Ms. Everett alleges that Defendants violated 15 U.S.C. §§ 1692d, 1692e, and 1692f by "invoking the possibility of tax consequences in the March 3, 2016 collection communication." [Filing No. 1 at 5.] She alleges that the Internal Revenue Code did not require Defendants to report cancellation of debt because "the largest amount Defendants proposed to forgive was $399.87, well below the $600.00 reporting requirement." [Filing No. 1 at 5.] She alleges that Defendants "needlessly and falsely invoking the possibility of tax consequences had the natural effect of harassing [her]." [Filing No. 1 at 6.]

Ms. Everett also alleges that "Defendants intended to elevate [her] concern over and response to the collection communication, increasing the likelihood of payment on the subject consumer debt." [Filing No. 1 at 6.] She alleges that Defendants breached their "duty not to make false and misleading statements to consumers they seek payment from." [Filing No. 1 at 5.] She alleges that she "has been harmed and suffered damages as a result of Defendants' false and deceptive actions." [Filing No. 1 at 6.] Ms. Everett seeks actual and statutory damages, as well as attorneys' fees and costs, under 15 U.S.C. §§ 1692k(a)(1)-(3). [Filing No. 1 at 6.]

Defendants now move to dismiss Ms. Everett's Complaint for lack of standing under Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). [Filing No. 11.]

## II.
### STANDARD OF REVIEW

"Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject-matter jurisdiction exists for his or her claims. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.
### DISCUSSION

A federal court always has a responsibility to ensure that it has jurisdiction. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009). The Court takes this responsibility seriously, and subject-matter jurisdiction "always comes ahead of the merits." *Leguizamo-Medina v. Gonzales*, 493 F.3d 772, 774 (7th Cir. 2007). Accordingly, the Court will address Defendants' subject-matter jurisdiction arguments first.

**A. Whether Ms. Everett Has Standing**

Defendants contend that Ms. Everett does not have standing to assert her claims because she has failed "to allege that she suffered a concrete injury as a result of Defendants' alleged violation of the FDCPA" – therefore, the Court does not have subject matter jurisdiction. [Filing No. 11 at 7.] Defendants contend that the threat of concrete harm is not sufficient to confer standing and, in any event, Ms. Everett has not alleged that she was threatened with any concrete harm. [Filing No. 11 at 7.] They also assert that incurring legal fees is not concrete harm.

In response, Ms. Everett argues that she "is a medically fragile individual" who suffers from several mental disorders, takes lithium daily, and is unable to work. [Filing No. 20 at 5.] She asserts that upon reading the Letter – and specifically the statement that a settlement may have tax consequences – she "became distressed because she believed the IRS would become involved," and her medical conditions were "exacerbated." [Filing No. 20 at 5.] She argues that she has standing to assert her claims because she suffered an injury in fact, which was concrete and particularized, and the injury was not hypothetical. [Filing No. 20 at 5.] Ms. Everett asks in the

alternative that if the Court finds she has not adequately alleged standing, she be given leave to amend her complaint.

On reply, Defendants argue that Ms. Everett did not allege in the Complaint that her medical ailments were caused or affected by the Letter. [Filing No. 22 at 2.] They reiterate their argument that the allegations of injury that do appear in the Complaint – incurring attorneys' fees and costs, "suffer[ing] financial loss," and "the threat of concrete harm" – are too vague to confer standing. [Filing No. 22 at 2-3.]

Article III of the Constitution grants federal courts jurisdiction over "cases and controversies[,]" and the standing doctrine is the tool used to identify which cases and controversies the federal judicial process can appropriately resolve. *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & state, Inc.*, 454 U.S. 464, 471-76 (1982). Standing is "the threshold question in every case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[T[he 'irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citations omitted). While "concrete" does not necessarily mean "tangible," a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549.

In *Spokeo*, the Supreme Court found that the plaintiff had not adequately alleged standing in connection with his claims under the Fair Credit Reporting Act. As to the injury-in-fact element, the Supreme Court noted that an injury needed to be both "particularized" – meaning it must affect

the person in a personal and individual way – and "concrete" – meaning it must be *de facto*, or that it must actually exist. 136 S.Ct. at 1548. It indicated that a plaintiff cannot argue that he or she is harmed simply because the defendant violated a particular statute when such violation might not result in any concrete harm. The Supreme Court further held that "a procedural right granted by statute can be sufficient in some circumstances" and "a plaintiff need not allege any *additional* harm beyond the one identified by Congress." *Id.* at 1549 (emphasis in original).

While the Seventh Circuit has not addressed the issue of standing in an FDCPA case since *Spokeo*, district courts in this Circuit have done so, and have noted that for certain violations under the FDCPA, Congress intended to create a legally cognizable injury. *See Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, * 2 (N.D. Ill. 2016) ("Congress gave consumers a legally protected interest in certain information about debts, and made the deprivation of information about one's debt . . . a cognizable injury. . . . [Plaintiff] was harmed by receiving a deficient and allegedly misleading communication from [Defendant] – a harm defined and made cognizable by the statute, but a concrete harm nonetheless"); *Quinn v. Specialized Loan Servicing, LLC*, 2016 WL 4264967, * 5 (N.D. Ill. 2016) ("[Defendant's] alleged failure to provide [Plaintiffs] with information required under the FDCPA constitutes a sufficiently concrete harm for purposes of Article III standing").

Ms. Everett discusses her medical ailments in her response brief, and argues that the Letter exacerbated those ailments. [Filing No. 20 at 5.] But, while Ms. Everett mentions her ailments in the Complaint, she does not allege in the Complaint that the Letter initially caused them, or caused them to worsen. [*See* Filing No. 1.] On a motion to dismiss, the Court will only consider whether the allegations in the Complaint itself confer standing. Accordingly, the Court will not consider Ms. Everett's allegations in her response brief that the Letter exacerbated her medical conditions.

The Court finds, however, that Ms. Everett has sufficiently demonstrated that she suffered a particularized and concrete injury when she received the Letter. The purpose of the FDCPA is to eliminate abusive debt collection practices by prohibiting a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Defendants sent the Letter in an attempt to collect a debt and, according to Ms. Everett, it was allegedly misleading because it stated that any settlement may have tax consequences, but that was not the case. Ms. Everett alleges that the misleading nature of the Letter caused her to incur costs and expenses consulting with her attorneys in connection with the Letter, to suffer financial loss, and to be subject to "the threat of concrete harm." [Filing No. 1 at 4.] Thus, Ms. Everett has met the requirements for Article III standing.

### B. Adequacy of Ms. Everett's Allegations

Having found that Ms. Everett has standing to assert her claims, the Court will consider whether she has adequately alleged those claims under Fed. R. Civ. P. 12(b)(6). The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343 (7th Cir. 1997) ("[The FDCPA] was designed to protect against the abusive debt collection practices likely to disrupt a debtor's life"). Defendants argue that Ms. Everett fails to state a viable claim under §§ 1692d, 1692e, or 1692f of the FDCPA. The Court will consider each claim in turn, in the order in which the parties addressed them.

*1. Failure to State a Claim Under § 1692e*

Defendants argue that Ms. Everett's Complaint fails to state a claim under [15 U.S.C. § 1692e](#) because the Tax Consequences Language is a true statement and similar language has been recognized by this Court as accurate. [[Filing No. 11 at 11-14](#).] Defendants argue that "there is nothing misleading or deceptive about informing the consumer that the 'settlement may have tax consequences.'" [[Filing No. 11 at 14](#).] Further, they contend that the Letter does not state that Defendants would make any report regarding the forgiven debt. [[Filing No. 11 at 12](#).]

In response, Ms. Everett argues that Defendants' inclusion of the Tax Consequences Language was incomplete, false, misleading, deceptive, and was included in the Letter as a "collection ploy." [[Filing No. 20 at 6-8](#).] Specifically, she argues that the Tax Consequences Language was incomplete and false because all three of the settlement options offered to her fell short of the $600.00 reporting threshold, so did not trigger any tax consequences. [[Filing No. 20 at 6-8](#).] Ms. Everett contends that Defendants intentionally misled and deceived her into believing that the Internal Revenue Service ("<u>IRS</u>") would become involved. [[Filing No. 20 at 9](#).]

On reply, Defendants argue that Ms. Everett misunderstands the self-reporting requirements of the tax code and that the $600.00 reporting threshold is "irrelevant to the facts present in the matter." [[Filing No. 22 at 4](#).] Further, Defendants argue that the Letter never mentions or alludes to any "reporting." [[Filing No. 22 at 4](#).] Defendants reassert that the Tax Consequences Language is accurate and not deceptive or misleading. [[Filing No. 22 at 4-8](#).] They also contend that a "settlement of any amount will invoke tax consequences." [[Filing No. 22 at 6](#).] Defendants state that this Court, in *[Rhone v. AllianceOne Receivables Mgmt., Inc., 2015 WL 4758786 (S.D. Ind. 2015)](#)*, "recognized that the tax-payer's requirement to report forgiven debt as income is distinct from the requirement to file a 1099C . . . ." [[Filing No. 22 at 8](#).]

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA sets forth non-exhaustive examples of conduct that violates this prohibition, such as "[t]he false representation of . . . the character, amount, or legal status of any debt . . . ." 15 U.S.C. § 1692e(2)(A). Other examples are "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(5), (10). Whether a debt collection letter is deceptive or misleading is a question of fact. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007). Dismissal is suitable only when "it is 'apparent from a reading of the [debt collection] letter that not even a significant fraction of the population would be misled by it.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (quoting *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004)).

"The courts have ruled that the [FDCPA] is intended for the protection of unsophisticated consumers . . ., so that in deciding whether for example a representation made in a [debt collection] letter is misleading the court asks whether a person of modest education and limited commercial savvy would be likely to be deceived." *Evory*, 505 F.3d at 774. An unsophisticated consumer "isn't a dimwit. She may be 'uninformed, naïve, [and] trusting,'. . . but she has 'rudimentary knowledge about the financial world,' and is 'capable of making basic logical deductions and inferences.'" *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA – even if it is false in some technical sense." *Id.* at 645–46.

To adequately allege a claim under § 1692e, then, Ms. Everett must plausibly allege that the Tax Consequences Language was "false, deceptive, or misleading," to an "unsophisticated consumer," not just that the Tax Consequences Language may have been factually inaccurate. *See Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (holding that "our test for determining whether a debt collector violated § 1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer"). Ms. Everett fails to allege with any plausibility that the Tax Consequences Language was misleading or deceptive. She argues that Defendants' inclusion of the Tax Consequences Language "is misleading and confusing due to the fact that none of Defendants' settlement offers would invoke any tax consequences." [Filing No. 20 at 8.] But Ms. Everett repeatedly equates tax consequences as being equal to the 1099C reporting threshold. This is not the case. A Form 1099C is filed by the creditor when the creditor cancels debt over $600. The Tax Consequences Language makes no mention of a Form 1099C or reporting to the IRS of any kind. Ms. Everett has unreasonably found meaning in the language that is plainly absent. The reasonable but unsophisticated consumer would not have understood the Tax Consequences Language to be an implication that Defendants intended to report the amount of discharged indebtedness to the IRS.

Moreover, the Tax Consequences Language is an accurate representation of the law. The Internal Revenue Code lists "[i]ncome from discharge of indebtedness" as a type of "gross income," 26 U.S.C. § 61(a)(12), and IRS Publication 4731 states that "the taxpayer may be required to report the canceled debt as income *regardless of the amount*," https://www.irs.gov/pub/irs-pdf/p4731.pdf (emphasis added). Ms. Everett concedes that Defendants did not "misstate the tax code *per se*," but argues that the Tax Consequences Language "was incomplete and inapplicable

to [her]." [Filing No. 20 at 6 (emphasis in original).] However, she does not provide any support for the proposition that the discharged amount of indebtedness would not be gross income to her. Defendants' statement does not misrepresent the law or mislead the consumer.

The unsophisticated consumer standard intentionally sets the bar low, so as to protect consumers from "unscrupulous collection methods." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000). Nonetheless, the Tax Consequences Language Ms. Everett bases her § 1692e claim on does not meet that standard, as it would not plausibly deceive or mislead even the unsophisticated consumer. Ms. Everett has thus failed to state a claim under 15 U.S.C. § 1692e upon which relief may be granted, and Defendants' Joint Motion to Dismiss is granted as to that claim.

### 2. *Failure to State a Claim Under § 1692d*

Defendants argue that the Letter, and specifically the Tax Consequences Language, "does not resemble any of the offenses listed under § 1692d and there is nothing in the letter that can be construed as a threat." [Filing No. 11 at 14-15.]

In response, Ms. Everett contends that Defendants' use of the vague language, "may have tax consequences" was intended to intimidate her. [Filing No. 20 at 11.] She argues that the Tax Consequences Language "threatened involvement of the IRS, when that is not a legal possibility given the proposed settlement savings." [Filing No. 20 at 11.]

Defendants reply by reiterating their argument that the Tax Consequences Language is an accurate and complete statement of the law. [Filing No. 22 at 4.] Defendants contend that Ms. Everett fails to understand the self-reporting requirement and has "confuse[d] her claim as one based on a non-existent 1099C threat." [Filing No. 22 at 5.]

15 U.S.C. § 1692d provides that:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
>
> (4) The advertisement for sale of any debt to coerce payment of the debt.
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

The Tax Consequences Language does not threaten Ms. Everett with any action and does not resemble any of the offenses listed in § 1692d. Ms. Everett characterizes the Tax Consequences Language as a threat of IRS involvement. [Filing No. 20 at 11.] The Court disagrees. Ms. Everett's claim relies on the argument that there can be no tax consequences when none of the settlement options would have resulted in a discharge of indebtedness that exceeded $600.00. This is incorrect. It is irrelevant if the amount discharged does not exceed $600.00 because any amount discharged is considered gross income by the IRS. *See Cozzi v. C.I.R.*, 88 T.C 435, 445 (1987) ("It is well settled that gross income includes income from the discharge of indebtedness"). Ms. Everett would have been required to report to the IRS the amount of indebtedness that was discharged. Defendants' statement did not threaten or harass Ms. Everett because it is a true and accurate statement. Even though the offenses listed in § 1692d are not exhaustive, the Court cannot

construe the statute to find a cause of action based on the Tax Consequences Language at issue here. Accordingly, the Court finds that Ms. Everett has failed to state a viable claim under § 1692d, and Defendants' Joint Motion to Dismiss as to Ms. Everett's § 1692d claim is granted.

### 3. Failure to State a Claim Under § 1692f

Defendants argue that Ms. Everett's Complaint fails to state a claim under 15 U.S.C. § 1692f because "it would be a far reach to find that truthfully informing a consumer that canceled debt may have tax consequences is an unfair or unconscionable collection practice." [Filing No. 11 at 15.]

Ms. Everett responds by arguing that the collection correspondence is unfair and unconscionable because the Tax Consequences Language is not true as applied to her. [Filing No. 20 at 11.] She further contends that Defendants included the Tax Consequences Language to mislead her into believing that the IRS would become involved. [Filing No. 20 at 11.]

On reply, Defendants reiterate that the Tax Consequences Language is an accurate statement and that "the amount forgiven is to be reported as taxable income." [Filing No. 22 at 4.]

Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," and lists examples of conduct that violates the statute. 15 U.S.C. § 1692f. The list of prohibited conduct in § 1692f is not exhaustive. *See Turner*, 330 F.3d at 996. The Seventh Circuit has called the phrase "unfair or unconscionable" in § 1692f "as vague as they come." *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874 (7th Cir. 2015) (quoting *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007)).

The Court recognizes the need to shield debtors from aggressive and unsavory debt collection practices. Nevertheless, the Court will not construe § 1692f so broadly as to find a cause of

action for "unfair or unconscionable" conduct when the Tax Consequences Language is an accurate statement of the tax code, and especially when a consumer may be unaware – as appears to be the case here – that the discharged amount of indebtedness may be considered gross income by the IRS.  Ms. Everett has not stated a claim upon which relief may be granted under § 1692f, and Defendants' Joint Motion to Dismiss is granted as to her § 1692f claim.

### IV.
#### CONCLUSION

For the foregoing reasons, the Court finds that Ms. Everett has failed to state a viable claim under §§ 1692d, 1692e, or 1692f of the FDCPA.  Therefore, Defendants' Joint Motion to Dismiss, [Filing No. 10], is **GRANTED** and Ms. Everett's claims are **DISMISSED WITH PREJUDICE**.[1] Final judgment shall enter accordingly.

Date: 11/28/2016

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[1] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend his or her complaint as a matter of course in response to a motion to dismiss.  The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion.  A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim."  Ms. Everett chose not to amend her Complaint in response to Defendants' Joint Motion to Dismiss, but rather chose to brief the motion and have the Court adjudicate the issues.  The Court is not required to give Ms. Everett another chance to plead her claims, particularly when there is no indication that she could, in fact, successfully amend her Complaint to cure the defects identified above even if given the opportunity to do so.  Accordingly, the Court, in its discretion, dismisses Ms. Everett's claims with prejudice.